**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


APRIL LOWE,

       **Plaintiff,**

   vs.                             **Civil Action 2:15-cv-2837
Magistrate Judge King**

COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**


<u>**OPINION AND ORDER**</u>


    This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.  With the consent of the parties, *see* 28 U.S.C. § 636(c), this matter is now before the Court on the *Administrative Record*, ECF No. 12, on plaintiff's *Statement of Specific Errors*, ECF No. 17, and on the Commissioner's *Memorandum in Opposition*, ECF No. 22.

**I.**

    Plaintiff April Lowe filed her current applications for benefits[1] on September 10, 2012, alleging that she has been disabled since March 3, 2010. PAGEID 223. The applications were denied initially and on consideration. On June 4, 2014, an administrative hearing was held at which plaintiff, represented by counsel, appeared and testified, as

---

[1] Plaintiff apparently filed three prior applications for benefits, the denials of which were not pursued. PAGEID 111.

did Mille M. Droste, who testified as a vocational expert. PAGEID 75-103. In a decision dated July 16, 2014, the administrative law judge found that, despite plaintiff's severe physical impairments, plaintiff has the residual functional capacity ("RFC") to perform a reduced range of sedentary work. PAGEID 55-66. Although this RFC precluded the performance of plaintiff's past work as a child monitor, a hotel cleaner/housekeeper, and a bus attendant, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff could nevertheless perform work that exists in significant numbers in the economy, including such representative jobs as callout operator, table worker, and toy stuffer. PAGEID 66-68. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. PAGEID 68.  That decision became the final decision of the Social Security Administration when the Appeals Counsel declined review on August 19, 2015. PAGEID 46-49.

## II.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and  employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve

2

conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff complains that the administrative law judge erred by failing to give appropriate weight to the opinions of her primary care physicians, Chandra Gowda, M.D., and John E. Ratliff, D.O. In a somewhat related argument, plaintiff also complains that the administrative law judge erred in failing to incorporate into plaintiff's RFC her need for a cane and restrictions on the use of her hands. *Plaintiff's Statement of Specific Errors.* The Court will discuss and consider the evidence only as it relates to the issues raised by plaintiff.

**III.**

Plaintiff was 45 years of age on her alleged disability onset date. She has a high school education and is able to communicate in English. PAGEID 67, 257.

Robert D. Whitehead, M.D., performed a consultative examination of the plaintiff at the request of the state agency in October 2012. PAGEID 363-366. Plaintiff complained of difficulty with gripping and holding objects, and weakness and intermittent numbness in the right

3

hand. "Sometimes her fingers will lock up in a clawed position." PAGEID 363. Plaintiff reported that she can life 10-15 pounds, can sit and stand for more than one hour, and can walk "several minutes at a time." *Id.* She can walk up a flight of stairs, or several blocks. She experiences intermittent shortness of breath. *Id.* X-rays of the lumbar spine were normal. PAGEID 367. On clinical examination, Dr. Whitehead noted "a normal gait using no assistive walking devices or braces." PAGEID 364. There was some slightly restricted forward flexion of the lumbar spine and some mild paravertebral tenderness. PAGEID 365. Straight leg raising was negative and deep tendon reflexes were symmetric. Plaintiff could walk on her heels and toes, and Waddell's and Spurling signs were negative. *Id.* The right upper extremity showed well maintained strength throughout. Sensation was intact throughout the extremities, although "grip strength is decreased." *Id.* Plaintiff's ability to pick up a coin, key, write, hold a cup, open a jar, button/unbutton, use a zipper, and open a door was normal. PAGEID 369. Plaintiff's fine motor skills were intact in the lower extremities. *Id.* From a neurological standpoint, sensation to light touch was intact, and motor strength was 5/5 through without deficit. *Id.* Dr. Whitehead diagnosed, *inter alia*, intermittent weakness of the left arm "of unexplained etiology," diabetes, and intermittent low back pain without active radiculopathy. PAGEID 365. According to Dr. Whitehead, plaintiff "could take part in standard sedentary type job duties without difficulty." *Id.*

In November 2012, a state agency physician, Rannie Amiri, M.D., reviewed the evidence of record and concluded that plaintiff does not have a severe physical impairment. PAGEID 113. In considering Dr.

4

Whitehead's assessment,[2] Dr. Amiri stated that "[w]hile the [plaintiff] can do sedentary work, this would not be the most she can do based on the overall findings." PAGEID 115. State agency physician Gary Hinzman, M.D., affirmed this opinion in April 2013. PAGEID 137.

Later in April 2013, Dr. Gowda, who has been plaintiff's primary care physician since February 2013, *see* PAGEID 293, completed a physical capacity form in which the doctor indicated that, because of plaintiff's history of cardiac problems, she would be limited to lifting 10 pounds occasionally and 5 pounds frequently. PAGEID 522. She could walk a total of one hour in an 8-hour workday, for only 30 minutes at a time. *Id.* Her ability to sit was not impaired. *Id.* She could occasionally stoop, reach, push/pull, and engage in fine and gross manipulation, but could rarely climb, balance, crouch, kneel and crawl. PAGEID 522-23. She should not work around heights, moving machinery, temperature extremes, pulmonary irritants and noise. She would require additional unscheduled rest periods throughout a workday. PAGEID 523. Dr. Gowda expressly indicated that a cane, walker, and brace had not been prescribed. *Id.*

In July 2013, John C. Novak, M.D., performed a nerve conduction study for complaints of pain in both arms, right worse than left. According to Dr. Novak, the study revealed moderately severe right carpal tunnel syndrome and findings that "are likely due to sensorimotor polyneuropathy such as from diabetes." PAGEID 532.

In October 2013, Dr. Ratliff, who has been plaintiff's primary care physician since June 2006, *see* PAGEID 278, completed a similar

---

[2] Dr. Amiri mistakenly referred to the consultative examiner as "Dr. Simon." It was Dr. Simon who read the x-rays of plaintiff's lumbar spine. *See* PAGEID 367.

physical capacity form in which he indicated that plaintiff's tendinitis of the right wrist limited her to lifting and carrying no more than 5 pounds. PAGEID 524. Her morbid obesity limited her to standing/walking for less than one hour, and to sitting for no more than one hour, in an 8-hour workday. *Id.* Plaintiff's history of myocardial infarction, hypertension, and diabetes limited her to only rarely climbing, balancing, stooping, crouching, kneeling, and crawling. *Id.* She could occasionally reach, and engage in fine and gross manipulation. PAGEID 525. Dr. Ratliff offered no opinion as to plaintiff's ability to push and pull. *Id.* Plaintiff should not work around heights, moving machinery, temperature extremes, or pulmonary irritants. *Id.* She would require additional unscheduled rest periods throughout a workday. *Id.* Dr. Ratliff expressly indicated that a cane and a brace had been prescribed for plaintiff. *Id.*

Plaintiff testified at the administrative hearing that she suffered a heart attack in August 2012; she continues to experience chest pains, "[m]aybe once a month," for which she takes nitroglycerin. PAGEID 90. She also complained of arthritis in her legs, but testified that her back is "fine." PAGEID 85.

Plaintiff, who is right-handed, PAGEID 88, also testified that she suffers from carpal tunnel syndrome in the right wrist, and tendinitis in the left wrist. PAGEID 79. The carpal tunnel syndrome causes pain that disturbs her sleep. PAGEID 88. Dr. Ratliff told her that he would consider referring her to surgery for the condition. *Id.*

Plaintiff's feet and hands swell. She drops things, including food, objects, and even "a baby." *Id.* She no longer wears a wrist brace, however, because "it seems like it's not even helping me." *Id.*

6

Plaintiff attributes the swelling of her feet to "the neuropathy from the diabetes. . . ." PAGEID 91. She has also experienced falls, which Dr. Ratliff attributed to her variable sugar levels, PAGEID 80, and which plaintiff attributes to being "off balance." PAGEID 82. She has used a cane, PAGEID 88, but did not have it with her at the administrative hearing because she hadn't "been falling as much. . . ." PAGEID 89. She uses a cane to "go up the steps." *Id.*

At the time of her heart attack, plaintiff was told not to lift more than 10 pounds. PAGEID 86. At the administrative hearing, plaintiff estimated that she can lift "[m]aybe 16 pounds." PAGEID 95. She estimated that she can walk a total of "[m]aybe two hours," but for no more than 15 minutes at a time. PAGEID 95, She can stand for a total of "two to three hours" throughout an 8-hour workday, PAGEID 94, although she could not recall when she had last done so, PAGEID 96. She has no problem sitting. PAGEID 95. She can bend over, but has difficulty stooping and kneeling more than occasionally. PAGEID 82. She can crouch "a little bit," *id.,* and can "[p]robably" crawl, although she has not done so. *Id.* She has no problem reaching overhead or reaching in front or to the sides, PAGEID 82-83, so long as she is not required to lift weight while doing so. PAGEID 89. Engaging in gross manipulation, or handling things, causes pain in both wrists. PAGEID 83. She "[m]ay be" able to engage in fine manipulation, or fingering. PAGEID 84. She can button buttons. PAGEID 84. She can push with her arms, but she cannot pull frequently because of pain. PAGEID 81. She can climb stairs occasionally before experiencing shortness of breath. *Id.* She experiences shortness of breath with exertion, which she attributes to her cardiac condition. PAGEID 90-91.

7

Asked to assume a claimant with plaintiff's vocational profile and the RFC eventually found by the administrative law judge, the vocational expert testified that such a claimant could not perform plaintiff's past relevant work but could perform such jobs as callout operator (1,000,000 jobs nationally), table worker (434,000 jobs nationally), and toy stuffer (350,000 jobs nationally). PAGEID 97-98. Asked to assume RFCs consistent with those articulated by Dr. Gowda and Dr. Ratliff, the vocational expert testified that such a claimant could not work. PAGEID 98-100.

The administrative law judge found that plaintiff's severe impairments consist of coronary artery disease with drug eluting stenting and status-post non-ST myocardial infarction, obesity, diabetes mellitus, tendinitis of the left wrist, and carpal tunnel syndrome of the right wrist. PAGEID 58. Plaintiff's impairments, whether considered singly or in combination, neither meet nor equal a listed impairment. PAGEID 61. Plaintiff does not challenge these findings.

The administrative law judge also found that plaintiff has the RFC to perform sedentary work

> with the following additional limitations: The claimant could never climb ladders, ropes, or scaffolds. She could occasionally climb stairs or ramps, balance, kneel, crouch, and crawl. The claimant could frequently handle and finger bilaterally.

PAGEID 62. The administrative law judge expressly considered plaintiff's tendinitis of the left wrist, tenderness to both wrists with palpation, reduced grip strength on the right, and moderately severe right carpel tunnel syndrome and sensorimotor polyneuropathy, but concluded that these conditions "are not so severe as to preclude

8

or seriously reduce the use of the claimant's hands." PAGEID 65. In considering plaintiff's RFC, the administrative law judge "considered opinion evidence in accordance with the requirements of" the Commissioner's regulations and rules. PAGEID 62. Specifically, the administrative law judge accorded "great weight" to Dr. Whitehead's opinion that plaintiff could engage in sedentary work without difficulty, reasoning that his opinion "is based on a thorough examination of the claimant and is not inconsistent with the totality of the evidence." PAGEID 64.

The administrative law judge accorded "minimal weight" to the opinions of plaintiff's primary care providers, Drs. Gowda and Ratliff. PAGEID 65-66. The administrative law judge found that their assessments were inconsistent with the totality of the medical evidence of record and with plaintiff's own assessment of her ability to engage in work-related functions. PAGEID 65-66. The administrative law judge also noted that both Drs. Gowda and Ratliff generally failed to document the specific medical findings that would support their articulated limitations of function. *Id.* The administrative law judge also considered the doctors' assessment of plaintiff's ability to use her hands and of plaintiff's need for a cane:

> Moreover, not only is Dr. Gowda's opinion inconsistent with the medical evidence, the claimant's own reported activities of daily living as well as physical abilities support greater functioning. For example, the claimant testified that she could reach without significant difficulty, yet Dr. Gowda opined the claimant could only reach occasionally.
>
> *     *     *
>
> Likewise, the claimant denied impairment in her ability to reach yet Dr. Ratliff again noted only occasional reaching. While the claimant did have tendinitis and carpal tunnel

9

affecting her hands, these abnormalities would not be consistent with only occasional use of the hands. For example, there was no evidence of atrophy or sensory disturbances in either hand, although decreased grip strength was noted on the right. Dr. Ratliff also noted that the claimant was prescribed a cane; however, the evidence does not support that the use of a cane would be medically necessary. There is no evidence of sensory loss to the feet or legs nor is there evidence of abnormal gait, motor weakness, or similar findings.

*Id.*[3]

**IV.**

Plaintiff first complains that the administrative law judge failed to give appropriate weight to the opinions of Drs. Gowda and Ratliff. The opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2); *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007). In determining whether substantial evidence is inconsistent with the treating physician's assessment, the administrative law judge is required to look at the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2),(4); 416.927(d)(2), (4).

---

[3] The administrative law judge also found that the form used by both Dr. Gowda and Dr. Ratliff, which he characterized as "quite leading and skewed," undermined their assessments. PAGEID 65-66. Although checklist assessment forms are not *per se* unreliable, the United States Court of Appeals for the Sixth Circuit has held that an administrative law judge may discount such an assessment where, as here, the treating provider offers little in the way of explanation for the reported limitations. *Price v. Comm'r of Soc. Sec. Admin.*, 342 Fed.App'x. 172, 176 (6th Cir. 2009).

Where an administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). In weighing the opinions of the treating physicians, the administrative law judge is required to consider such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2) - (6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).

Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, at 376; *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007); *Rogers*, at 242 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the case presently before the Court, the administrative law judge's failure to accord controlling weight to the opinions of plaintiff's treating providers was not erroneous. As the administrative law judge noted, these doctors' extremely restrictive assessments of plaintiff's ability to engage in work-related functions were inconsistent with their own treatment records, with plaintiff's

description and assessment of her own ability to engage in work-related activities, and with Dr. Whitehead's findings made during his consultative examination of plaintiff. Moreover, the administrative law judge provided good reasons for according only "minimal weight" to these treating providers' opinions, and his reasons for doing so enjoy support in the evidence of record and are sufficiently specific to permit both plaintiff and this Court to understand and evaluate his decision in that regard. Plaintiff's first contention is without merit.

**V.**

Plaintiff also complains that the administrative law judge improperly failed to incorporate into plaintiff's RFC her need for a cane and restrictions on the use of her hands. Social Security Regulation (SSR) 96-9p, 1996 WL 374185 (July 2, 1996), provides that a claimant's occupational base "may be significantly eroded" by the need to use a cane or other hand-held assistive device. However, SSR 96-9p specifically requires

> medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).... For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

*Id.* at *7. If a cane is not medically necessary, it cannot be considered a restriction or limitation on the plaintiff's ability to work, *Carreon v. Massanari,* 51 Fed.Appx. 571, 575 (6th Cir.2002), and

12

the administrative law judge is not required to reduce the claimant's RFC accordingly. *Casey v. Sec'y of Health Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993).

In the case presently before this Court, the administrative law judge found that plaintiff's use of a cane was not medically necessary: "There is no evidence of sensory loss to the feet or legs nor is there evidence of abnormal gait, motor weakness, or similar findings." PAGEID 66. There is substantial support in the record for this finding. Dr. Gowda expressly indicated that a cane had not been prescribed for plaintiff. PAGEID 523. Moreover, plaintiff herself testified that she uses a cane only to "go up the steps." PAGEID 89. Even if plaintiff's testimony in this regard were fully credited, her need for a cane to climb stairs would not serve to further reduce her RFC for sedentary work. *See* SSR 96-9p ("[I]f a medically required hand-held assistive device is needed only for . . . ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.). The Court concludes that the administrative law judge did not err in this regard.

Plaintiff also complains that the administrative law judge improperly failed to incorporate in her RFC greater restrictions on plaintiff's use of her hands: "[H]e determine[d] that Ms. Lowe is capable of handling and fingering frequently, despite the findings of carpal tunnel, repeated reports of bilateral hand pain, and her own physicians['] determination that she can perform these tasks only occasionally." *Plaintiff's Statement of Specific Errors*, PAGEID 701.

The administrative law judge did not err in finding that plaintiff's RFC permits her to frequently handle and finger bilaterally. PAGEID 62. To the extent that plaintiff's argument in this regard is based on her challenge to the administrative law judge's evaluation – and discounting – of the opinions of her treating physicians, the Court has already rejected that challenge. The administrative law judge noted the presence of tendinitis and carpal tunnel that affect plaintiff's hands and her decreased grip strength on the right; however, he also noted no evidence of atrophy or sensory disturbances in either hand. PAGEID 66. Although plaintiff complained of pain in her hands bilaterally, the administrative law judge found that plaintiff's testimony was not entirely credible in light of her "essentially routine and/or conservative" treatment. PAGEID 63. It is significant, too, that plaintiff testified that she does not use a wrist brace. PAGEID 88. Moreover, although Dr. Whitehead noted decreased grip strength, he also expressly found that plaintiff's ability to pick up a coin, key, write, hold a cup, open a jar, button/unbutton, use a zipper, and open a door was normal. PAGEID 369. In short, there is substantial evidence in the record to support the administrative law judge's finding in this regard.

**VI.**

Having carefully considered the entire record in this action, and having concluded that the decision of the administrative law judge enjoys substantial support in the record and conforms to all applicable standards, the Court concludes that the decision of the

14

Commissioner of Social Security must be, and it is hereby **AFFIRMED**. This action is hereby **DISMISSED**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

_s/Norah McCann King_
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

June 21, 2016